*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

MICHAEL SHAUN MORIARTY,

      Defendant-Appellant.

UNPUBLISHED
August 10, 2026
12:22 PM

No. 376028
Van Buren Circuit Court
LC No. 2022-023893-FH

Before: BOONSTRA, P.J., and YOUNG and KOROBKIN, JJ.

PER CURIAM.

Defendant, Michael Shaun Moriarty, appeals by right his conviction of operating while intoxicated causing death, MCL 257.625(4). Defendant contends that the prosecution presented constitutionally insufficient evidence to support the conviction and that the verdict was against the great weight of the evidence. For the reasons stated in this opinion, we disagree with defendant and therefore affirm.

## I. BACKGROUND AND FACTS

On September 29, 2021, after 9:00 p.m., defendant was driving his motor vehicle, a Toyota RAV4, on 27th Street in Van Buren County when he struck Todd Mullin, who was on the edge of the roadway with his motorcycle. It was dark at the time of the collision with no streetlights or ambient lighting in the area. The road is a rural two-lane roadway with a speed limit of 55 mph. Each lane is approximately 10 feet wide; the road has no fog line. Mullin's motorcycle had become disabled on the shoulder of the roadway prior to the collision and was at a complete stop or at a near-stop. At the time of impact, Mullin was either straddling the motorcycle or standing beside it and pushing it. Mullin was wearing dark-colored clothing, a black authorized motorcycle helmet, and retroreflective Nike shoes. When emergency responders arrived, they attempted to resuscitate Mullin, but their efforts were unsuccessful, and he was declared dead at the scene. At the scene, defendant admitted that he had consumed six to seven beers. The parties stipulated that defendant's blood alcohol content was 0.18% at the time of the collision.

Defendant was charged with operating while intoxicated causing death, MCL 257.625(4). At his jury trial, the prosecution and defense each called their own expert accident

reconstructionist. Both experts agreed on the location of maximum engagement, meaning the precise moment in the crash when the two vehicles reached their deepest point of overlap, and the overall measurements of the accident scene. However, the experts disagreed about whether the accident was unavoidable. The prosecution's expert concluded that the accident was not unavoidable. The prosecution's expert explained that although defendant may not have been able to come to a stop to avoid hitting Mullin, defendant should have been able to make a lane change or swerve to avoid hitting Mullin, so the accident was not "a hundred percent unavoidable." The defense expert disagreed; he concluded that the accident was unavoidable for any driver, regardless of sobriety. Relying on nighttime visibility research, he stated that at the rate of 54 mph (roughly 80 feet per second), defendant was left with two seconds, or possibly less than one second, to perceive, identify, and react. The black box data from defendant's vehicle indicated that in the 4.2 seconds before impact, the vehicle increased in speed continuously from 49.1 mph to 54.7 mph and that defendant applied his breaks sometime in the final two-tenths of a second before the crash. The defense expert explained that although alcohol does increase the necessary perception-reaction time, this factor was irrelevant here because even a sober driver could not have perceived and reacted to Mullin in time.

The defense also called an expert in toxicology who opined that Mullin's toxicology at the time of death showed a blood alcohol content of .056% as well as THC and methamphetamine. The toxicology expert's opinion was that, at the drug interaction levels present in Mullin's system at the time of the collision, Mullin had global transient neurocognitive impairment—meaning impairment of all normal functions of the brain. Specifically, Mullin would have experienced significant impairment in cognition, physiological measures (movement, balance), reaction time, learning, memory, and judgment; heightened euphoria; psychotic manifestations including panic and paranoia; and increased tendency toward aggressive behavior. On cross-examination, the toxicology expert acknowledged that he could not say specifically that Mullin's drug levels contributed to the crash; that determination was beyond his expertise.

Following the close of evidence, the trial court instructed the jury on the elements of driving while intoxicated causing death. As relevant here, detailed instructions on factual cause, proximate cause, and superseding cause were provided as follows:

> To prove this charge, the Prosecutor must prove each of the following elements beyond a reasonable doubt:
>
> * * *
>
> Fifth, that the Defendant's operation of the vehicle caused the death of Todd Mullin.
>
> To cause the death, the Defendant's operation of the vehicle must have been a factual cause of the death, that is, but for the Defendant's operation of the vehicle, the death would not have occurred. In addition, the Defendant's operation of the vehicle must have been a proximate cause of the death of Todd Mullin.
>
> Proximate cause is a legal concept designed to prevent criminal liability from attaching when the death is too remote or unnatural a consequence of the

Defendant's operation of the motor vehicle. For the Defendant's operation of the motor vehicle to be regarded as a proximate cause of the victim's death, the death must be a direct and natural result of the Defendant's actions. To determine if the Defendant's operation of the motor vehicle was a proximate cause of the death, ask yourself the following question: Was there an intervening cause that superseded the Defendant's conduct such that the causal link between the Defendant's conduct and the victim's injury was broken. The standard by which to gauge whether an intervening cause supersedes and thus severs the causal link is generally one of reasonable foreseeability. The linchpin in the superseding cause analysis[] is whether the intervening cause was foreseeable based on an objective standard of reasonableness. If it was reasonably foreseeable, then the Defendant's conduct will be considered a proximate cause. If, however, the intervening act by the victim or a third party was not reasonably foreseeable that is, gross negligence or intentional misconduct then, generally, the causal link is severed and the Defendant's conduct is not regarded as a proximate cause of the victim's death. Gross negligence is not merely an elevated form of ordinary negligence. Gross negligence means wantonness and disregard of the consequences which may ensue and indifference to the . . . rights of others that is equivalent to a criminal intent. Ordinary negligence by the victim or a third party will not be regarded as a superseding cause because ordinary negligence is reasonably foreseeable.

Defense counsel indicated to the court that they were satisfied with the jury instructions and had no objections.

The jury deliberated for approximately 50 minutes before returning its guilty verdict.

Defendant subsequently filed a motion for judgment of acquittal notwithstanding the verdict and motion for new trial, which the trial court denied. Defendant now appeals.

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Defendant first contends that the prosecution failed to prove beyond a reasonable doubt that defendant's operation of his motor vehicle proximately caused the death as required by MCL 257.625(4). We disagree.

An appellate court reviews a trial court's determination that there was sufficient evidence to support a conviction de novo. *People v Prude*, 513 Mich 377, 384; 15 NW3d 249 (2024). "We view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015) (quotation marks and citation omitted). Appellate courts "do not

interfere with the jury's assessment of the weight and credibility of witnesses or the evidence." *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013).

There are five elements of operating while intoxicated causing death: (1) The defendant operated a motor vehicle; (2) the vehicle was operated on a highway or another place open to the general public or generally accessible to motor vehicles; (3) while operating the defendant was intoxicated; (4) the defendant operated the vehicle voluntarily, knowing that they had consumed an intoxicating substance; and (5) the defendant's operation of the vehicle caused the death of the victim. MCL 257.625(1), (4); see also *People v Schaefer*, 473 Mich 418, 433; 703 NW2d 774 (2005). In the present case, only the fifth element—causation—is in dispute.

To prove causation, the prosecution must prove two distinct subelements beyond a reasonable doubt: (1) actual (factual) cause and (2) proximate, or legal cause. See *id.* at 435. Factual cause concerns whether, " 'but for' the defendant's conduct," the result would have occurred. *Id.* "[P]roximate causation . . . is a legal construct designed to prevent criminal liability from attaching when the result of the defendant's conduct is viewed as too remote or unnatural." *Id*. at 436. "For a defendant's conduct to be a proximate cause, the victim's injury must be a 'direct and natural result' of the defendant's actions." *Id.* (citation omitted). The conduct will not be deemed a proximate cause if an "intervening cause . . . superseded the defendant's conduct such that the causal link between the defendant's conduct and the victim's injury was broken." *Id.* at 436-437.

"Whether an intervening cause supersedes a defendant conduct is a question of reasonable foreseeability. Ordinary negligence is considered reasonably foreseeable, and it is thus not a superseding cause that would sever proximate causation." *People v Feezel*, 486 Mich 184, 195; 196 NW2d 67 (2010). But because it is not reasonably foreseeable, " 'gross negligence' or 'intentional misconduct' on part of a victim is considered sufficient to 'break the casual chain between the defendant and the victim.' " *Id*. (citation omitted). Gross negligence means "wantonness," or "[c]onduct indicating that the actor is aware of the risk but indifferent to the results and usually suggests a greater degree of culpability than recklessness," and "disregard of the consequences which may ensue[.]" *Id*. at 195-196 (citations and quotation marks omitted). A "victim's negligence . . . is an important factor to be considered by the trier of fact in determining whether proximate cause has been proved beyond a reasonable doubt." *Id.* at 196. "[P]roximate causation must be decided on a case-by-case basis." *Id.* at 201.

Defendant argues that Mullin's intoxication and actions were grossly negligent and therefore a superseding cause that relieved defendant of criminal liability. That is, defendant emphasizes Mullin's physical condition and the choices he made prior to the accident, and he argues that they were not reasonably foreseeable. Therefore, defendant argues, the evidence presented to the jury demonstrated a break in the casual link between defendant's conduct and Mullin's death and the jury did not properly consider that evidence.

But defendant's framing of the argument misapplies the standard of review for a sufficiency-of-the-evidence claim. Defendant asks this Court to view the evidence in his favor, but this we cannot do. Instead, we must draw all reasonable inferences and make credibility choices in support of the jury verdict. See *Bailey*, 310 Mich App at 861. Viewing the evidence in the light most favorable to the prosecution, as we must, a rational trier of fact could have found

-4-

that the victim's conduct was merely negligent and did not break the causal chain.  See *Meissner*, 294 Mich at 452.

A rational trier of fact could have concluded that although Mullin was intoxicated, his intoxication did not cause him to act in a manner that was not reasonably foreseeable.  A victim's conduct of driving while intoxicated does not automatically amount to a superseding cause as a matter of law; instead, proximate causation must be decided by the jury on a case-by-case basis. *Feezel*, 486 Mich at 201.  It is likewise reasonable for a trier of fact to find that the failure to wear more reflective gear while operating a motorcycle at night constitutes ordinary negligence and does not rise to the level of gross negligence or intentional misconduct.  Moreover, evidence about the effect of Mullin's intoxication on the crash was mixed.  The toxicology expert testified that Mullin would have experienced significant impairment in cognition, reaction time, and judgment due to the drug interaction levels in his system, but the expert acknowledged he could not say with certainty how Mullin's impairment contributed to the crash.  Although defendant's expert testified that the crash was unavoidable because of victim's conduct and the environment, the prosecution's expert described the crash as avoidable because defendant could have swerved.  Because we "do not interfere with the jury's assessment of the weight and credibility of witnesses or the evidence," *Dunigan*, 299 Mich App at 582, the jury was free to credit the prosecution's expert's testimony over that of the defense expert.  As for the environment of the accident, it was reasonably foreseeable that a country road would be dark with no ambient lighting at 9:00 p.m. in September and that there could be a disabled vehicle on or near the shoulder.  Considering these factors in totality, we conclude that a rational jury could have found that Mullin's actions amounted to mere ordinary negligence such that defendant's operation of his vehicle was the proximate cause of the accident.

Defendant argues that this case "is eerily like" *Feezel*.  But in that case, our Supreme Court reversed the defendant's conviction because the trial court had not allowed the jury to *consider* evidence of the victim's blood alcohol content when determining the element of proximate causation.  *Feezel*, 486 Mich at 196, 216-217.  There, the intoxicated victim was walking in the middle of the roadway with his back turned to traffic during a rainstorm despite the availability of a sidewalk.  *Id.* at 199.  "Thus, the proofs were sufficient to create a jury-submissible *question* about whether the victim was grossly negligent, and the victim's high level of intoxication would have aided the jury in determining whether the victim acted with 'wantonness and a disregard of the consequences with may ensue . . . .' " *Id.* (citation omitted) (emphasis added).  In this case, by contrast, the jury *was* allowed to hear evidence about Mullin's intoxication.  *Feezel* does not mandate that the jury reach a particular outcome; instead, *Feezel* concerns whether evidence should have been submitted to the jury regarding whether a victim was grossly negligent.  See *id.* at 199.  Again, because we "do not interfere with the jury's assessment of the weight and credibility of witnesses or the evidence," *Dunigan*, 299 Mich App at 582, the jury was free to evaluate and consider the credibility of the toxicology expert's testimony when determining whether Mullin's intoxication was a superseding cause that relieved defendant of criminal responsibility.  In essence, the trial court complied with *Feezel* by submitting the issue to the jury, and the jury rendered its verdict.

Defendant also argues that due to the length of time it took for the parties to agree on jury instructions and their complexity, the jurors could not possibly have understood the trial court's instructions.  But it is well established that jurors are presumed to follow their instructions.  *People*

*v Hana*, 447 Mich 325, 351; 524 NW2d 682 (1994). Moreover, defense counsel admitted that the parties and trial court discussed the jury instructions in great length before they were ultimately given to the jury. When asked if "counsel was satisfied with the instructions as a whole," defense counsel responded "yes." When asked if there were any objections to place on the record with regard to the jury instructions, defense counsel responded "no, your Honor." "[A]n affirmative statement that there are no objections to the jury instructions constitutes express approval of the instructions, thereby waiving review of any error on appeal." *People v Hershey*, 303 Mich App 330, 351; 844 NW2d 127 (2013). Therefore, any challenge to the complexity or accuracy of the jury instructions as they relate to proximate causation is waived, and we need not consider it. See *id.*

## B. GREAT WEIGHT OF THE EVIDENCE

Defendant also contends that the trial court abused its discretion by denying his motion for new trial because the great weight of the evidence preponderates against a finding that defendant's operation of his vehicle was the proximate cause of Mullin's death. Again, we disagree.

A trial court's denial of a motion for a new trial on the ground that the verdict was against the great weight of the evidence is reviewed for an abuse of discretion, which occurs when "a trial court chooses an outcome falling outside the range of reasonable and principled outcomes." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). "The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Id*. "Generally, a verdict may be vacated only when the evidence does not reasonably support it, and it was more likely the result of causes outside the record such as passion, prejudice, sympathy, or some other extraneous influence." *Id*.

Defendant relies on his prior assertions to support his claim that the verdict was against the great weight of the evidence. But because, as discussed above, the evidence reasonably supports the conclusion that Mullin was simply negligent as opposed to grossly negligent, the evidence does not preponderate so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand, and there is also no indication that the jury's decision was motivated by passion, prejudice, or some other extraneous influence. See *id.* Therefore, the trial court did not abuse its discretion by denying defendant's motion for a new trial. See *id*.

Affirmed.

/s/ Mark T. Boonstra
/s/ Adrienne N. Young
/s/ Daniel S. Korobkin